HARRY BONAPARTE, *Plaintiff in Error*, v. THE STATE OF
FLORIDA, *Defendant in Error*.

Opinion Filed March 11, 1913.

JURORS—DISCRIMINATING AGAINST AFRICANS IN SELEC-
TION OF.

1.  Our statutes on the subject of selection of jurors do not dis-
    criminate, and do not authorize discrimination, against any
    person for jury service because of race or color.   But if the
    executive officers of the courts charged with the duty of exe-
    cuting such statutory provisions, deliberately, in the execution
    thereof, discriminate against negroes because of their race
    or color, it would be not only a violation of our statutes, but
    would violate the provisions of the 14th Amendment to the
    Federal Constitution; and would render their action null and
    void in any case in which such discrimination occurred.

2.  In the trial of a challenge to the array of jurors composing
    a special panel selected and summoned by a deputy sheriff
    on a venire directing him to summon them from the body
    of the county at large, where the cause of challenge is that
    such deputy sheriff in selecting such panel discriminated

Bonaparte v. State—Opinion of Court.

against persons of African descent because of their race and color, and where such deputy sheriff as a witness for the State denies any such discrimination and asserts that he has acted as deputy sheriff in such county for the past eight years, it is error for the court to sustain an objection by the State to the following cross-interrogatory to such deputy sheriff propounded by the counsel for· the· defendant who was a negro : "You have stated that you have been deputy sheriff for eight years, now state whether or not you have selected any colored men as jurors in this court or any of the courts of the county during this time?" The question was proper cross-examination, and . if answered in the negative would have been strong impeachment of the truth of such deputy sheriff's denial of the alleged discrimination in a county where it had been undisputedly shown that there were more negroes than white people, and that a great many of such negroes were duly qualified in every way for service as jurors. A wide latitude should be allowed in the cross-examination of a witness in the propounding of questions tending to show the interests, inclination, bias or prejudice of the witness.

Writ of error to the Criminal Court of Record of Duval County.

Judgment reversed.

SHACKLEFORD, C. J., AND COCKRELL, J., dissent.

*I. L. Purcell,* for Plaintiff in Error;

*T. F. West,* Attorney General, and *C. O. Andrews,* for the State.

TAYLOR,. J.—Harry Bonaparte seeks relief here from a conviction of the crime of embezzlement in the Criminal Court of Record of Duval County.

From the record in the case it appears that the regular panel of jurors in permanent attendance during the week in which the defendant's trial was had was quashed on the challenge of the defendant to the array on the ground of discrimination against the negro race in its selection. A special venire to be summoned from the body of the county at large was then issued to try the defendant's' case, and none but white men were summoned or returned by the deputy sheriff in response to this special writ.

The defendant again interposed a challenge to the array of jurors so returned on said special venire on the ground that the sheriff in selecting said jurors discriminated against negroes on account of their race, color and previous condition of servitude, and summoned no negroes thereon because of such discrimination, although there were several thousand negroes in said county who were fully qualified for jury service. That it has been the custom for many years in this court, when special venires are issued and served for the sheriff to fail and refuse to select any names of persons of African descent to serve on the jury in this Honorable Court.

To sustain this challenge to the array the defendant proved by undisputed testimony that according to the last official census there were more negroes residing in Duval County than there were white people. That a great many of them owned their own homes besides other property and that there were several schools supported by them exclusively, outside of the public schools supported by the county and State. That there are in the county at least one thousand negroes of sound judgment and discretion and fully qualified for jury service, but that during the past ten or fifteen years no negro

has ever served or been summoned on a jury in any of the courts of the county.

The State to rebut this challenge put the deputy sheriff, who selected and summoned the panel challenged, on the stand as a witness, who was questioned and answered as follows:

"My name is Geo. W. Thames. I am deputy sheriff of Duval County, Florida. Q. Did you serve the venire this morning? A. I did. Q. In doing so, did you make any discrimination against negroes? A. I did not. Q. How did you get this jury? A. I went down to the corner of Forsyth and Main (Streets) and I did not see any colored faces at all in the crowd. Q. Did you make any difference in selecting this jury, on account of a man's race, color or previous condition of servitude? A. I did not."

On his cross-examination by the defendant's counsel, after answering that he had been a deputy sheriff of the county for eight years, the following question was propounded to him: "You have stated that you have been deputy sheriff for eight years, now state whether or not you have selected any colored men as jurors in this court or any of the courts of the county during this time?"

But to the propounding of this question the State's Attorney objected on the ground that the subject of the inquiry was whether or not he discriminated in the selection of the present jury. This objection the court sustained and refused to permit the question to be answered. This ruling is assigned as error. This was error. The question itself disclosed on its face the fact that it was sought thereby to elicit from the witness, viz.: whether or not during the eight years service of the witness as a deputy sheriff of the county, he had ever selected or summoned a negro for jury service in that

or any other court of the county. The question tended to test the truth of the witness' answers on the direct examination to the effect that in selecing this panel of jurors he had not discriminated against the negro race, which was the proper function of the cross-examination. If in answer to this question the witness had answered that during the whole of his eight years service as a deputy sheriff, he had never for this or any other court in the county selected or summoned a negro for jury service, it would have gone far towards impeaching the truthfulness of his answer that in selecting this jury he did not discriminate against negroes. Since it would be beyond the ken of the judicial or any other mind to appreciate how a deputy sheriff in a county containing more negroes than whites could through a series of eight years in selecting jurors for all the courts of the county abstain from selecting a single negro for jury service during all those years, and then come up afterwards and truthfully testify that he had not discriminated against the negro race in the selection of a panel of jurors all of whom still belonged to the white race.

We have held in effect that our statutes on the subject of the selection of jurors do not discriminate, and do not authorize discrimination against any person for jury service because of race or color. But that if the executive officers charged with the duty of executing such statutory provisions, deliberately, in the execution thereof, discriminated against negroes because of their race or color, it would be not only a violation of our statutes, but would violate the provisions of the 14th Amendment to the Federal Constitution, and would render their action null and void in any case in which such

discrimination occurred. Montgomery v. State, 55 Fla. 97, 45 South. Rep. 879.

The question discarded by the trial court was legitimate cross-examination. Stewart v. State, 58 Fla. 97, 50 South. Rep. 642; Wallace v. State, 51 Fla. 547, 26 So. Rep. 713, and the court below committed reversible error in sustaining the objections of the State thereto, and the judgment below should be and is hereby reversed and a new trial ordered, at the cost of Duval County.

HOCKER AND WHITFIELD, J. J., concur.

WHITFIELD, J., concurring.

In dealing with rights guaranteed by the Federal Constitution, as in other matters of consequence, courts should look to the substance of things and not to the mere forms in which they appear in julicial proceedings.

The bill of exceptions in noting an exception to the sustaining of an objection to the question propounded on cross-examination, continues thus: "The evidence being offered to prove that the witness, a deputy sheriff for eight years, had not during this time, although summoning many jurors, had failed and refused to summon any colored men." This clearly shows the purpose of the question and its relevancy to the issue being tried, viz.: whether the officer in summoning the jury then challenged, "did fail and refuse to select any colored men of African descent to serve on the jury ............................ thus discriminating against all colored men of African descent," in violation of law.

As the witness was the deputy who summoned the jury in question, and as the proffered testimony, viewed in the light of the evidence already adduced, at least

tended to show from long continued conduct of the deputy, an unlawful discrimination by him in summoning the particular jury, the question propounded on cross-examination was not subject to the objection interposed to it, and in sustaining the objection to the question a material error was committed ,for which the judgment should be reversed.

Under the provision of the Fourteenth Amendment to the Federal Constitution that "no State shall ............... ............................. deny to any person within its jurisdiction the equal protection of the laws," the defendant below has no right to have members of his race selected as jurors for his trial. But such organic provision secures to him the right by timely and appropriate procedure to ascertain whether members of his race legally qualified to serve as jurors *have been so unlawfully discriminated against* by officers in selecting the jury for his trial as to deny to him the equal protection of the laws, thereby affecting the validity of the trial. See Montgomery v. State, 55 Fla. 97, 45 South. Rep. 879.

SHACKLEFORD, C. J., dissenting.

Harry Bonaparte seeks relief here from a conviction of the crime of embezzlement. When the case was called for trial, the defendant, after being duly arraigned, pleaded not guilty and also interposed a challenge to the array of jurors summoned and empannelled for jury duty during that week and moved to quash the venire. The State joined issue upon the challenge and testimony was taken thereon, which resulted in the sustaining of the motion and such panel was discharged. Thereupon, another venire was ordered by the court, which venire consisted of twelve white men, no colored men being thereon. The

defendant then presented a challenge to this array of jurors, upon the following grounds:

"1.  That the Sheriff of Duval County, Florida, whose duty it is made by law to summon special venires when order by the court for jurors to serve in our said court; and whereas on the 30th day of October, A. D. 1912, a special venire did issue out of this Honorable Court for twelve (12) good and lawful men to be summoned from the body of the County of the County of Duval, State of Florida, to serve as jurors for the second (2nd) week of the October Term, A. D. 1912, returnable October 30th, A. D. 1912; of that day, and said order is hereto attached; and whereas, the Sheriff in executing said venire, did summon only white men to serve as jurors for and during the said week of said court and did fail and refuse to select any colored men of African descent to serve on the jury as aforesaid, thus discriminating against all colored men of African descent.

2.  That there are, and were at the time of execution of said venire, in Duval County, Florida, many thousand colored men of African descent of approved integrity, fair character, and sound judgment and intelligence, and fully qualified for jury duty, and this fact was well known to the Sheriff of our said County.

3.  That the defendant is a colored man of African descent and a citizen and resident of the County of Duval, of the State of Florida, and of the United States of America.

4.  That it has been the custom for many years in this court, when special venires are issued and served, for the Sheriff to fail and refuse to select any names of persons of African descent to serve on the jury in this Honorable Court.

5.  That the discrimination refused and failure of the

Sheriff to select any men of the African race to serve on the jury is on account of their race, color and previous condition of servitude; and this discrimination against colored men of African descent is a denial to the defendant of the equal protection of the law as contemplated and guaranteed by the Fourteenth Amendment of the Constitution of the United States; all of which the defendant is ready to verify.

Therefore, he prays the venire and array of petit jurors drawn to serve for the present week of this term of our said court, and from which the trial jury is to be selected to try this defendant be quashed; hence this challenge to the array."

This challenge was duly sworn to by the defendant, the State joined issue and testimony was taken thereon, at the close of which and after argument of counsel the court denied the challenge, to which ruling the defendant excepted, and this forms the basis for the first assignment. I set out all the testimony introduced by the defendant, which is as follows:

"My name is John H. Ballou. I reside in the City of Jacksonville, Duval County, Florida. I am a lawyer by profession. I have practiced in the courts in the State of Florida since 1881. I have been present at the sessions of the courts held in Duval County, Florida, since I came to the State, with the exception, for the short time I was absent from the County.

My association with the colored people enables me to state that the colored people of this city and County, have furnished for themselves several schools and colleges in addition to the public schools. They have about six or eight private schools and two colleges supported by themselves and about a half dozen public schools; these

schools are well attended by colored children, and have been ever since I came to the State.

The colored people have quite a number of churches in the city and County and own considerable valuable property in the city and beautiful church buildings; these churches are well attended.

They also have a number of fraternal orders. The Masons own a piece of property on the corner of Duval and Broad Sts., the lot alone is worth quite $50,000 and they have in course of construction a Temple at the cost of $100,000, they also have property on Florida Ave., worth about $40,000. The Odd Fellows own considerable property here, and we have other fraternal societies owning considerable property.

The colored people have accumulated a great deal of property here, some are large property owners, quite one-half of the property owned here is owned by colored people; that is there are more colored people owning their own homes than there are white, at the same time the white have more valuable holdings, altho, there are colored men who pay taxes on property from Fifty Thousand Dollars to One Hundred and Fifty Thousand Dollars. I know these facts from personal examination and investigation.

The colored population of this County is large, and according to the last census, there are more colored people in the County than white.

I know that there are one thousand of colored men of sound judgment, discretion and fully qualified for jurors duty, I have attended the courts of this County and this court since 1881 and I know that no colored men have served on the jury in this court for the last ten or fifteen years or in any of the courts of the County."

And the defendant to further maintain the issues on

his part produced and called to be sworn as a witness Vinzant, who testified as follows:

"I am Deputy Sheriff of Duval County, Florida, and have been such nearly 28 years. I attend the sessions of this court and have not seen any colored men serve on the jury in this court in the last ten years or longer. I do not know if any has ever been summoned for jurors duty, in this court, however, I do know, none have served, and I don't think any have been summoned."

Thereupon the State introduced as a witness Geo. W. Thames, who testified as follows:

"My name is Geo. W. Thames, I am Deputy Sheriff of Duval County, Florida. Q. Did you serve the venire this morning? A. I did. Q. In doing so, did you make any discrimination against negroes? A. I did not. Q. How did you get this jury? A. I went down to the corner of Forsyth and Main, and I did not see any colored faces at all in the crowd. Q. Did you make any difference in selecting this jury, on account of a mans race, color or previous condition of servitude? A. I did not.

Cross Examination.

How long have you been Deputy Sheriff? A. Eight years. Q. You have stated; 'That you have been Deputy Sheriff of Duval County, for eight years,' now state whether or not you have selected any colored men as jurors in this court or any of the courts of the County during this time?

Counsel for the State objects to the question, on the grounds that the question is whether or not he discriminated in the selecting of the present jury.

Objection sustained. Exceptions noted. The evidence being offered to prove that the witness a Deputy Sheriff

for eight years had not during this time altho summoning many jurors, had failed and refused to summon any colored men.

Here the defendant rest his case."

It is earnestly contended that the trial court erred in sustaining the foregoing objection interposed by the State to the question propounded by the defendant to the witness on his cross-examination. I fully approve of our holding in Padgett v. State, 64 Fla. 389, 59 South. Rep. 946, as to the cross-examination of witnesses, which is as follows:

"A party has no right to cross-examine a witness except as to facts and circumstances connected with matters testified about by the witness on his direct examination. If a party desires to inquire into other matters, he must make the witness his own. While this is true, a wide range should be allowed on the cross-examination of a witness when the questions propounded seek to elicit the motives, interest or animus of the witness as connected with the cause or the parties thereto, upon which matters he may be contradicted by other evidence. Likewise considerable latitude should be permitted in the propounding of questions on cross-examination which seek to test the memory or credibility of the witness."

However, I am of the opinion that no violation of the principles therein enunciated has been shown in the instant case. The question to which objection was sustained was clearly not in cross of any facts and circumstances testified about by the witness on his direct examination, and it is not made to appear that such question sought to elicit the motives, interest, or animus of the witness as connected with the cause or the parties thereto, or that it sought to test the memory or credibility of the witness. Although the defendant states that the purpose which

he had in view in propounding the question was to show that the witness, during the eight years in which he had been deputy sheriff, had not during such period, though summoning many jurors, summoned any colored men, but had failed and refused to do so, I do not think that it was a compliance with the rule laid down in McKinnon v. Lewis, 60 Fla. 125, 53 South. Rep. 940, so as to warrant us in declaring that the sustaining of the objection to the question by the trial judge constituted reversible error. Our holding in the cited cases was as follows:

"Where a question to a witness to which an objection has been sustained on the trial does not itself indicate whether the answer to it will be material or pertinent evidence, the party seeking to introduce the evidence, in order to have such ruling reviewed upon writ of error, must make an offer of what he purposes to prove, so that both the trial and appellate court can determine whether the proposed evidence is material; otherwise he fails to make his alleged error to appear, and an appellate court will so declare."                                     •

It will be observed that it had not been shown that it had been the custom or duty of such witness to summon jurors during the period in which he had been deputy sheriff. On the trial of the first challenge it appeared that he was not one of the deputies who performed. this particular service. No other questions were propounded to him by the defendant, so far as we are informed by the transcript, than those which have been copied above. The transcript does not show that any testimony was offered by the defendant in rebuttal of the testimony introduced by the State. I fully approve of all that we said in Montgomery v. State, 55 Fla. 97, 45 South. Rep. 879, and would refer to it as being well in point in the instant case. I call attention to the fact that in that

case the State introduced no testimony, while in the case at bar the State introduced as a witness the deputy sheriff who summoned the jury and who testified positively that he made no difference in selecting the jury on account of a man's race, color or previous condition of servitude. Upon this point he is uncontradicted. As we held in the case of Montgomery v. State, *supra,* it was incumbent upon the defendant to prove the illegal action by the official which is set out in his challenge. This I think that he has failed to do. In this case, as in Montgomery v. State, *supra,* it is not contended that the statutes of this State under which jurors were selected and summoned are violative of any constitutional provision, but only that there was illegal action under these statutes by certain officials. The law applicable thereto is so fully set forth and discussed in the Montgomery case that there is no occasion for us to add anything more thereto. It is not contended that the defendant was entitled as a matter of right to have all or any colored men on the jury. That could not successfully be done. As we held in Colson v. State, 51 Fla. 19, 40 South. Rep. 183, "A defendant as a matter of right is not entitled to have any particular jurors empannelled to try his case. The right of peremptory challenge is a right to *reject* and not a right to *select.*" Also see Melbourne v. State, 51 Fla. 69, 40 South. Rep. 189; McRae v. State, 62 Fla. 74, 57 South. Rep. 348; Penton v. State, 64 Fla. 411, 60 South. Rep. 343; Ammons v. State, 65 Fla. —, 61 South. Rep. 496. We would also refer to our discussion in Young v. State, 63 Fla. 55, 58 South. Rep. 188, and Cochran v. State, 65 Fla. —, 61 South. Rep. 187. I think that the defendant has failed to sustain his averment that the sheriff, in summoning the venire from which was to be drawn the panel to try the defendant, "did fail and refuse to select any col-

·ored men" to serve thereon, which was the real point at issue. I am clear that no injury to the defendant has been made to appear, therefore the first assignment must be held to have failed.

The second assignment is based upon the overruling of the motion for a new trial. Several grounds thereof are based upon rulings of the trial court in admitting or excluding proffered testimony, all of which we have examined, and find no error therein. Other grounds question the sufficiency of the evidence to support the verdict. It is sufficient to say that I think that the evidence introduced is amply sufficient to warrant a conviction. The defendant also filed a motion for a new trial upon the ground of newly discovered evidence, the overruling of which forms the basis for the third assignment. No extended discussion of this assignment is necessary. We have several times laid down the principles governing applications for a new trial upon the ground of newly discovered evidence. See Howard v. State, 36 Fla. 21, 17 South. Rep. 84, and Williams v. State, 53 Fla. 89, 43 South. Rep. 428. I have examined the motion and accompanying affidavits, and am of the opinion that the newly discovered evidence referred to therein, assuming that all of the other requirements laid down in the cited cases have been complied with, would be merely cumulative in its nature. This being true, no error was committed in overruling the motion.

No reversible error having been made to appear, I think that the judgment should be affirmed.

COCKRELL, J., *dissenting.*

I think the question properly refused because based upon the assumption, not warranted on this record, that

this witness had at any time selected any jurors, white or colored. So far as we are advised, and perhaps to the actual knowledge of the judge presiding at the trial, Thames, though a deputy sheriff, performed other duties than that of serving venires.

In the more populous counties, the work of the sheriff's office is divided, so that different deputies are assigned to different duties, and it is easily conceivable that one deputy may never be called upon to do the class of duties assigned to another. This is not mere idle speculation. Upon this very record, and prior to the presentation of Thames as a witness, one Nolen, had testified without contradiction, that he was and had been a deputy sheriff for five years, but did not as a rule serve venires for jurors, and that this work was done usually by Deputies Ellis, Vinzant and Lenenthal; thus showing the division of the work in the sheriff's office and that the witness Thames was not one to whom this particular duty was assigned.

The further statement in the bill of exceptions, relied upon by my brother WHITFIELD appears to me as the statement by counsel of the purpose of the question, and but indicates more clearly the false assumption upon which the question was based.

I sympathize with the majority of this court in their efforts to keep clear the fountain head in the administration of justice, a jury box untainted with official delinquency, but it seems to me we would be committing one error to correct another, and to that I cannot give assent.