CHARLES H. HAYNES, *Plaintiff in Error*, v. THE STATE
OF FLORIDA, *Defendant in Error.*

Opinion filed April 28, 1916.

On petition for rehearing, June 27, 1916.

1.  In giving effect to the rights secured by the organic law for
    the protection of human life and liberty, courts should con-
    sider the substance of things, and should not be controlled
    by mere matters of form or of technical procedure.

2.  Under the controlling organic provisions a person accused of
    crime is not entitled to have members of his race selected as
    jurors for his trial.

3.  A person on trial for a criminal offense has a right to a
    judicial determination by timely and appropriate procedure
    whether members of his race legally qualified to serve as
    jurors have been unlawfully discriminated against by officers
    in selecting the jury for his trial so as to deny him the
    equal protection of the laws, or so as to deny him the
    right to be "equal before the law" in maintaining his "in-
    alienable rights  *  of enjoying and defending life and lib-
    erty."

4.  Where the statute of a State in its terms does not abridge
    a privilege or immunity of citizens of the United States, or
    does not deny to any person the equal protection of the laws,
    the action of officials in executing the provisions of such
    statute is presumed to be legal.

5.  When illegal action by an official in the administration or
    execution of a valid statute is charged, such illegal action
    should be duly, properly, directly and distinctly alleged, and
    if not admitted by demurrer or otherwise, should be duly
    proven or proof thereof duly offered according to the usual
    and proper mode of procedure in such cases.

6.  Where the evidence does not sustain an allegation that in
    selecting a jury the officers "discriminated against negroes
    of African descent because of their race, color or previous

condition of servitude," a challenge of the array or a motion to quash the venire on such ground is properly overruled.

7. In the absence of legislative provisions describing the mode in which jury views are to be conducted, it is more in consonance with the theory and methods of judicial trials that the jury should base their findings solely upon sworn testimony in open court, or by depositions taken as provided by law.

8. The extent to which the Circuit Court may go in ordrering a view by a jury in a criminal case is to direct a view of the premises, where a crime is supposed to have been committed, by the jury. The defendants and counsel for the respective parties may be permitted to accompany them, and some person selected by the parties, or named by the court, may accompany the jury to point the premises out to them.

9. Where in a trial for murder it clearly appears from the record that on the application of the counsel for the defendant, the defendant being present, the court directed a view by the jury of the place where the homicide was committed; that counsel for the defendant was present with the judge during the view, that no testimony was taken, that no objection was made to the proceedings, that nothing that could have been harmful to the accused transpired during the view, that the view affected no conflicts in the evidence, and that the evidence, without reference to the view, fully sustained the verdict, and no objection is made to the view proccedings until after verdict, the judgment of conviction will not be reversed merely because the defendant was not present at the view, but was not denied the privilege of being present.

10. Evidence of threats will not be excluded on the ground that it "is immaterial and irrelevant and is not shown to be a part of the *res gestae*," when it tends to show the intent of the accused with reference to the offense charged.

11. Under the statute relating to arrests without warrant, it is not error to charge that it is the duty of any sheriff, city marshal, or other police officer to arrest without warrant

and take into custody any person whom such officer has reasonable ground to believe and does believe has committed any felony or about to commit a felony or engage in a fight or other breach of the peace, and carrying concealed weapons is a breach of the peace there being appropriate evidence upon which the charge could be predicated.

12. Motions relating to matters *in pais* are not self-supporting

Writ of Error to Circuit Court, Hillsborough County; F. M. Robles, Judge.

Judgment affirmed.

*H. P. Bailey* and *D. W. Perkins,* for Plaintiff in Error;

*T. F. West,* Attorney General, and *Glenn Terrell,* Assistant, for the State.

WHITFIELD, J.—This writ of error was taken to a conviction of murder in the first degree and a sentence to capital punishment.

After being arraigned and pleading not guilty, the accused, "a negro of African descent," presented motions "challenging the array of jurors herein both as to the nine jurors drawn from the box * * * and also the special venire issued by the court for nine good and lawful men to be summoned from the body of the county," on the ground that the county commissioners are all white men and for 15 or 20 years they have not selected from among the citizens of the county "who are eligible for jury duty, any men of African descent, 'and that such neglect and refusal * * * is because of their race, color and previous condition of servitude," notwithstanding there are and were a thousand or more negroes of Afri-

can descent and citizens of the county and of the United States "living in said county of fair character, sound judgment and intelligence and capable of jury duty." There was also presented a motion "to quash the special venire issued" to the sheriff for the summoning of persons to serve as jurors in the cause. The ground of the latter motion is that the sheriff "discriminated against negroes of African descent because of their race, color and previous condition of servitude, although there are now and have been for a great many years, one thousand or more negroes of African descent living in Hillsborough County, State of Florida, and who are citizens of said county, State of Florida, and Unitied States of America, and who are men of fair character, sound judgment and intelligence and capable of performing jury duty; that it has been the custom for a great many years past in this court when venires are issued and served for the sheriff of said county to fail and refuse to select any names of persons of African descent to serve on the jury in this court, because of their race, color and previous condition of servitude, and that in such neglect and refusal on the part of the sheriff whose duty it is to select persons in executing special venires to discriminate against negroes who are of African descent, is a denial to this movant of the equal protection of the laws." Both of the motions were sworn to by the accused. The court denied the motions, but no exception to such rulings was taken. These rulings are included among the grounds of a motion in arrest of judgment, but as the motions to quash the panels of jurors are not a part of and do not appear on the face of the record proper, they are not proper grounds for a motion in arrest of judgment. The rulings denying the motions to quash the veniries are a part of the motion for new trial

and are also specifically assigned as error.   As the motions to quash the veniries and the rulings thereon are matters not of record, but *in pais,* and as no exception was taken to the rulings, when made, the accused is not entitled to have them reviewed on writ of error.   But as the conviction is of a capital offense, the motions, the evidence in support of them and the rulings thereon have been carefully considered.

In support of the motions a witness testified that he is a negro of African descent; that he is a property owner; that he does not know who is eligible to jury duty in this State "under the meanings of the law, except those fully qualified by being registered voters and paying taxes;" that he does not know how many negro males are in the county; that the negroes own churches of large value and a small school in the county; that "a good many" of the negro men are "of fair character, sound judgment and intelligence;" that he had never been summoned to do jury duty in the county; that he had never known or heard of any one of African descent "having been served to do jury duty in the county;" that he had lived in the county eight years; that he does not know the names of any persons who "had been summoned to jury duty in the county the last eight years." Another witness testified that he is the Clerk of the Circuit Court; that he had lived in the county 49 years; that he had been Clerk of the County Commissioners nearly three years; that during that time he thinks no negroes were selected and certified in the list of jurors; that he does not know any negroes in the county above the age of 21 who are "of fair character, sound judgment and intelligence"—the old time negroes whom he knew are all dead.   "I can't recall any just now, and these new people in here, I don't know anything about them;" that quite a few of them

own property; that he had known of negroes serving on juries in the county, about 25 years ago, "I don't know just when the last negro was on a jury here to my knowledge;" that he thinks none has served within the last 10 or 15 years; that the population of the county is about 60,000; that 700 names are drawn on the jury list.

The Constitution of Florida ordains that "all men are equal before the law, and have certain inalienable rights, among which are those of enjoying and defending life and liberty." Sec. 1 Declaration of Rights. The Federal Constitution provides that "No State shall * * * deny to any person within its jurisdiction the equal protection of the laws." Sec. 1, Art., XIV, Amendments.

In giving effect to the rights secured by the organic law for the protection of human life and liberty, courts should consider the substance of things, and should not be controlled by mere matters of form or of technical procedure. Under the controlling organic provisions a person accused of crime is not entitled to have members of his race selected as jurors for his trial. But the quoted fundamental law secures to him the right to have it duly ascertained and determined by timely and appropriate procedure whether members of his race legally qualified to serve as jurors have been unlawfully discriminated against by officers in selecting the jury for his trial so as to deny to him the equal protection of the laws, or so as to deny him the right to be "equal before the law" in maintaining his "inalienable rights * * * of enjoying and defending life and liberty."

Where the statute of a State in its terms does not abridge a privilege or immunity of citizens of the United States, or does not deny to any person the equal protection of the laws, the action of officials in executing the provisions of such statute is presumed to be legal. When

illegal action by an official in the administration or ex-
ecution of a valid statute is charged, such illegal action
should be duly, properly, directly and distinctly alleged,
and if not admitted by demurrer or otherwise, should be
duly proven or proof thereof duly offered according to
the usual and proper mode of procedure in such cases.
Montgomery v. State, 55 Fla. 97, 45 South. Rep. 879;
Bonaparte v. State, 65 Fla. 287, text 293, 61 South. Rep.
633.   The statutes require that "jurors shall be taken
from the male persons above the age of twenty-one years
who have resided in this State for one year, and in their
respective counties for six months and who are citizens
of the State of Florida," and who are not under prose-
cution for and have not been convicted of stated crimes,
unless restored to civil rights, and shall be such persons
only as the selecting officers "know or have good reason
to believe are of approved integrity, fair character, sound
judgment and intelligence."   Secs. 1570 *et seq.* Gen.
Stats. of 1906.

The evidence adduced did not support the allegation
of the motions that in selecting persons for jury duty the
officers "discriminated against negroes of African de-
scent because of their race, color or previous condition of
servitude."   One witness testified that he does not know
of the qualifications of the negroes of the county for jury
duty, and does not think any negroes have served on the
jury in the court within the last ten or fifteen years; and
another witness testified that he had not known of col-
ored men serving on the jury in the county; that a good
many of the negroes of the county are "men of fair char-
acter, sound judgment and intelligence;" and that he does
not know the qualifications of a juror under the law.
This does not prove the allegations of "discrimination
against negroes," or show any unlawful discrimination

in the selection of jurors of which the accused may complain on the ground that he is denied a right secured by the organic law of the land.  See Martin v. State of Texas, 200 U. S. 316, 26 Sup. Ct. Rep. 338; State v. Daniels, 134 N. C. 641, 46 S. E. Rep. 743; Hanna v. State, 52 Tex. Crim. Rep. 162, 105 S. W. Rep. 793; Fugett v. State, 45 Tex. Crim. Rep. 313, 77 S. W. Rep. 461; Hubbard v. State, 43 Tex. Crim. Rep. 564, 67 S. W. Rep. 413; Smith v. State, 45 Tex. Crim. Rep. 552, 78 S. W. Rep. 694; Binyon v. United States, 4 Ind. Ter. 642, 76 S. W. Rep. 265.

After the State had introduced its testimony and rested, counsel for the defendant stated that "the defendant now requests the court, under proper supervision and instruction to send the jury to the spot of the scene. so that they may better understand the situation."  The State Attorney interposed no objection.  It was upon the suggestion of defendant's counsel agreed that a named "State witness should point out the scene of the homicide to the court and jury."  The Judge, State Attorney and two members of defendant's counsel, "without the presence of the prisoner and defendant," proceeded to the scene.  The witness pointed out the places to be noted and the court admonished the witness and the jury not to make remarks.  No objection or exception was in any way taken to the proceeding had at the request of counsel for the defendant by which the jury had a veiw of the *locus in quo*.  Upon returning to the court room the defendant was introduced as a witness in his own behalf and the trial proceeded.  Though the defendant asked for the view and no exception was taken by or for him to the proceedings of the view, the matter has been considered, and no harmful or prejudicial error appears.

The statute merely provides that "the court may order a view by the jury."  Sec. 3989 Gen. Stats. 1906.

In the absence of legislative provisions describing the mode in which jury views are to be conducted, it is more in consonance with the theory and methods of judicial trials that the jury should base their findings solely upon sworn testimony in open court, or by depositions taken as provided by law.

The extent to which the Circuit Court may go in ordering a view by a jury in a criminal case is to direct a view of the premises, where a crime is supposed to have been committed, by the jury. The defendants and counsel for the respective parties may be permitted to accompany them, and some person selected by the parties, or named by the court, may accompany the jury to point the premises out to them. Garcia, Rodriguez and Sans v. State, 34 Fla. 311, 16 South. Rep. 223.

In People v. Tarm Poi, 86 Cal. 231, the court say: "When a party requests that there be such a viewing, he should not be heard afterwards to object, unless he can show that, without his consent or knowledge, there has been some misconduct in the proceeding which has caused him substantial injury. He should not be allowed to use it voluntarily as a means of entrapping the opposite party into mere abstract errors." In State v. Reed, 3 Idaho, 754, the court, in a case like this, say: "Where the view is had on motion of the defendant, and the record does not disclose that anything improper or prejudicial to the defendant took place during the view, no error had been committed that would justify a reversal; that it was incumbent upon the defendant to make any desire that he had to be present at the view manifest to the court, and by his failure to do so, he clearly waived any right, constitutional or otherwise, he might have had to be present." And in State v. Hartley, 22 Nev. 358, the court

say: "That whatever the nature of the rights of the defendant may be in such case, and from whatever source such rights may be derived, he may and does waive the same when the action of the court is taken and the view made on his request and without suggestion that he desires to be present at the view; and that in such case it is too late to complain after verdict." People v. Mathews, 139 Cal. 527, 73 Pac. Rep. 416.

Where in a trial for murder it clearly appears from the record that on the application of the counsel for the defendant, the defendant being present, the court directed a view by the jury of the place where the homicide was committed; that counsel for the defendant was present with the judge during the view, that no testimony was taken, that no objection was made to the proceedings, that nothing that could have been harmful to the accused transpired during the view, that the view affected no conflicts in the evidence, and that the evidence, without reference to the view, fully sustained the verdict, and no objection is made to the view proceedings until after verdict, the judgment of conviction will not be reversed merely because the defendant was not present at the view, but was not denied the privilege of being present. See Rutherford v. Commonwealth 78 Ky. 639; State v. Adams, 20 Kan. 311; State v. Buzzell, 59 N. H. 65; State v. Hartley, 22 Nev. 342, 40 Pac. Rep. 372; State v. Lee, 8 Ore. 214; State v. Reed, 3 Idaho, 754, 35 Pac. Rep. 706; State v. Congdon, 14 R. I. 458; Elias v. Territory, 9 Ariz. 1, 76 Pac. Rep. 605, 11 Ann. Cas. 1153; Whitley v. State, 114 Ark. 243, 169 S. W. Rep. 952; Shular v. State, 105 Ind. 289, 4 N. E. Rep. 870; People v. Mathews, 139 Cal. 527, 73 Pac. Rep. 416; People v. Thorn, 156 N. Y. 286, 50 N. E. Rep. 947, 42 L. R. A. 368; Blythe v. State, 47 Ohio St. 234, 24 N. E. Rep. 268;

People v. White, 20 Cal., App. 156; 128 Pac. Rep. 417; Starr v. State, 5 Okla. Cr. 440, 115 Pac. Rep. 356; Jenkins v. State (Wyo.), 135 Pac. Rep. 749; 2 Elliott on Evidence, § 1244.

It has been held to be error to refuse the defendant permission to be present at a view of the *locus in quo* by the jury. See People v. Palmer, 43 Hun (N. Y.) 397; Foster v. State, 70 Miss. 755, 12 South. Rep. 822; Cases cited in note to 11 Ann. Cas. 1159.

In this case the homicide occurred in a public street and the defense was justification or excuse. The witness who was suggested by counsel for the defendant and agreed on for that express purpose, stated in the presence of the jury the names of the streets and indicated the place where the homicide occurred. The judge states in the bill of exceptions that no testimony was taken. It does not appear that a view of the place was at all material since there were no complications or conflicts in the testimony that could reasonably have been affected by the view. There is nothing whatever to indicate any misconduct on the part of the jury or any irregularity that could have been harmful to the accused. The judge was present with defendant's counsel and frequently admonished the witness not to testify, or make remarks while he was pointing out the streets and giving their names, and indicating the door the deceased and those with him "came out of," where the deceased "turned off" and "where he staggered." Nothing whatever was asked or said about the fatal shooting or about the defendant. There was no material error of which the accused may rightly complain for the first time after verdict. Rutherford v. Commonwealth, 78 Ky. 639; People v. White, 20 Cal. App. 156, 128 Pac. Rep. 417; State v. Mortensen

26 Utah 312, 73 Pac. Rep. 562, 633; Elias v. Territory, 9 Ariz. 1, 76 Pac. Rep. 605, 11 Ann. Cas. 1153.

A witness testified that the defendant had said "that he hadn't had any justice with the Port Tampa City Officials, and that he was going to clean them up the first chance he'got." The deceased was Marshal of the town, and the threat was made about three months before the trial. A motion to strike this testimony on ground that it "is immaterial and irrelevant and is not shown to be a part of the *res gestae*," was overruled. This was not error as the testimony tended to show an intent to injure the officials of the town of whom the deceased was one.

The following charge was given to the jury:

"17. It is the duty of any sheriff, city marshal, or other police officer to arrest without warrant and take into custody any person whom such officer has reasonable ground to believe and does believe has committed any felony or about to commit a felony or engage in a fight or other breach of the peace, and carrying concealed weapons is a breach of the peace."

In view of the provisions of Sections 3263 and 3929 Gen. Stats. of 1906 relating to arrests without warrant, and of the evidence that the defendant had a pistol concealed on his person as well as a gun in his hands when he was approached by the deceased officer and the fatal shooting followed, the giving of the charge is not error. The jury may have inferred from the circumstances in evidence that the deceased knew or reasonably believed the defendant was violating the penal laws of the State or the municipality when he accosted him.

In his order denying the motion for new trial the judge stated that "the jury returned into court only one time before rendition of verdict, of its own volition, and requested the court to repeat Charge No. 17, which the

court refused to give, but then proceeded to read to the jury the entire charge of the court." One ground of the motion for new trial is that "the court erred, after the jury was considering its verdict and returning to the court room the second and third time at which the jury asked the court to repeat to them and instruct them as to charge No. 17, as above noted, and which the court gave to them in charge again." This ground fails because of the statement in the order denying the motion, which motion was not self-supporting even if the matter stated constituted error.

There being ample evidence to support the verdict, and no reversible errors appearing in the transcript, the judgment is affirmed.

TAYLOR, C. J., and SHACKLEFORD, COCKRELL and ELLIS, JJ., concur.

## On Petition for Rehearing.

A petition for rehearing suggests that the Court failed to fully consider the assignment that fatal error was committed in allowing, as it is contended, the jury to be taken to a place other than the court house and in permitting testimony to be there introduced against the defendant in his absence.

The jury were taken to the scene of the homicide for a view of the premises as is expressly provided by statute. Such view was had at the request of counsel for the defendant. As said in the opinion, the trial judge states in the bill of exceptions that no testimony was taken while the view was being had. Counsel for the defendant, presumably in the presence of the accused, proposed that a named State witness point out the objects involved

in the view and no objection was made to the agreed proceedings.

The defendant had a constitutional right "to meet the witnesses against him face to face," but this right in its substance was not violated in the view proceedings as shown by the bill of exceptions. The statute allowing a view was in force when the present constitution was adopted.

A rehearing is denied.

All concur.