160 So.2d 104 (1963)
Willie PORTER, Appellant,
v.
The STATE of Florida, Appellee.
No. 31854.
Supreme Court of Florida.
October 16, 1963.
Rehearing Denied January 17, 1964.
*105 George Edward Travers, Cocoa Beach, for appellant.
Richard W. Ervin, Atty. Gen., George R. Georgieff and A.G. Spicola, Jr., Asst. Attys. Gen., for appellee.
O'CONNELL, Justice.
Willie Porter appeals from a death sentence entered after conviction of first degree murder committed in Martin County.
*106 Appellant first contends that the trial court erred by refusing to grant his motion to quash the indictment of the grand jury.
In his motion to quash the indictment appellant alleged that there had been a systematic exclusion of Negroes from the grand jury that indicted him and this discrimination deprived him of equal protection of law as guaranteed by the Fourteenth Amendment of the Federal Constitution.
The trial court held a hearing on this motion to quash at which appellant's counsel testified as to results of an examination of the records of the supervisor of registration. This counsel also offered in evidence a certified copy of the jury list from which the grand jury was chosen.
Appellant's counsel testified that he had examined the records of the supervisor of registration and from these records he had determined that at the pertinent time there were 7608 registered voters in Martin County of which 740, or 10.8%, were Negroes.
The jury list placed in evidence contained the names of 1308 persons, of which only 16, or 1.2%, were Negroes.
He further testified no Negroes were selected for inclusion on the jury list from two precincts, although in one of these precincts there were 170 Negro registered voters, approximately one third of the total registered in that precinct, and that from two precincts made up entirely of Negro voters only seven Negroes were included on the jury list.
The state offered no evidence. However, it objected at every stage to the receipt of appellant's counsel's testimony on the ground that it was secondary evidence, arguing that the best evidence would be the testimony of the county officials responsible for jury selection. The appellant did not offer the testimony of any such officials.
In a well reasoned order the trial court denied the motion to quash.
We think the trial court was correct in doing so.
The appellant's argument to the trial court, and now to us, is that the figures and percentages above stated in themselves show a systematic exclusion of Negroes from the subject jury list. In effect he argues that had Negroes not been systematically excluded more than 16 of the 740 Negro voters would have been placed on the jury list. He says that the disparity between the number of registered Negro voters, 740 or 10.8% of the total registered voters, and the number placed on the jury list, 16 or 1.2% of names on the jury list, in itself proves that discrimination was practiced.
It is noted here that the appellant does not maintain that there was any discrimination against Negroes in the selection from the jury list of the grand jury which indicted him or the petit jury which tried him. The evidence does not indicate whether Negroes served on either jury.
Further, we note that appellant does not argue or attempt to show that any discrimination had been practiced in previous years.
Nor does appellant contend that the applicable statutes in any way discriminate against Negroes. He could not successfully do so, for as this Court said in the earliest Florida case on the identical question now under discussion, Tarrance v. State, 1901, 43 Fla. 446, 30 So. 685; 188 U.S. 519, 23 S.Ct. 402, 47 L.Ed. 572, our statutes:
"* * * disqualify no person or class of persons from jury service because of race, color, or previous condition of servitude; nor do they authorize any discrimination on this account to be made by those whose duty it is to enforce the regulations prescribed for selecting, summoning, and impaneling. If, therefore, the defendants have been denied the rights claimed by them under the fourteenth amendment of the constitution of the United States, it has been done, not in obedience to the *107 requirements of our jury laws * * * but by the improper conduct of those engaged in administering those laws."
This statement is equally true today.
The question presented by appellant is not a new one either in this state or in the federal courts. As a result well defined rules of law have been developed which control the question. Because of the nature of the issue presented here and the facts introduced in evidence to support it, our decision does not require us to consider all of these rules.
It is well settled that discrimination in the selection of juries because of race, class or color is violative of the federal constitution. Cassell v. Texas, 1950, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839.
This Court has held that grand jury indictments should be quashed where such discrimination was shown to have been practiced. Montgomery v. State, 1908, 55 Fla. 97, 45 So. 879; Bonaparte v. State, 1913, 65 Fla. 287, 61 So. 633 and State v. Lewis, 1943, 152 Fla. 178, 11 So.2d 337. In other cases we recognized the invalidating effect of such discrimination, but found that it was not shown to have been practiced. Haynes v. State, 1916, 71 Fla. 585, 72 So. 180; Royals v. State, 1917, 73 Fla. 897, 75 So. 199, and Washington v. State, 1928, 95 Fla. 289, 116 So. 470.
There are decisions which hold that a showing of great disparity between the proportion of Negroes on a jury list and the number of that race in the total population may indicate discrimination. State v. Goree, 1962, 242 La. 886, 139 So.2d 531; United States ex rel. Seals v. Wiman, 304 F.2d 53 (5th Cir., 1952). It would follow that, unless satisfactorily explained, a great disproportion in the number of Negroes qualified for jury service and the number included on a jury list might well be an indication of invalidating discrimination.
The appellant here bottoms his contention on this last theory. He has offered no direct showing that the selecting officials intentionally discriminated against Negroes in the preparation of the jury list. Nor did he attempt to show that the system, method or standards employed by these officials were in themselves discriminatory. He relies solely on the results of the selection procedures as reflected in his statistics.
Our task here is to determine whether the evidence in this case shows sufficient disproportion or disparity to raise a presumption that discrimination was practiced.
As this Court said in the Tarrance case, supra, 30 So. at page 688:
"The presumption is that those charged with administering the laws have properly discharged their duty, and against any misconduct on their part, until the contrary is made to appear."
This presumption places upon one claiming discrimination through arbitrary exclusion from jury service of a class, sex or race the burden of producing substantial evidence to support the charge. Hoyt v. State of Florida, 1961, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118. In the absence of a showing to the contrary it will be presumed that the selecting officials compiled the jury list in a fair effort to select the best qualified persons without discrimination because of race or color. Discrimination will not be presumed. State v. Gill, 1937, 186 La. 339, 172 So. 412, cert. den. 301 U.S. 685, 57 S.Ct. 792, 81 L.Ed. 1343; Montgomery v. State, 1908, 55 Fla. 97, 45 So. 879; Tarrance v. State of Florida, supra.
In this case appellant has not met the burden of overcoming the presumption that the selecting officials proceeded properly.
Assuming for the purpose of argument only that the statistics and figures testified to by appellant's counsel would be adequate to show such a great disportion in Negroes qualified for jury service and the number included on the jury list, i.e. 10.8% as opposed *108 to 1.2%, the figures used to arrive at these percentages are admitted by appellant's counsel not to be accurate or reliable.
As pointed out by the state, the evidence presented by appellant does not show how many of the 740 Negroes who were registered voters were women and how many of these women had made themselves subject to call for jury service by registering for such service pursuant to Sec. 40.01(1), F.S.A.
Under this statute, recently approved by the United States Supreme Court in the Hoyt case, supra, women cannot be selected for jury service, even though registered to vote, unless they volunteer by registering with the clerk of the circuit court. The number of the Negro voters who are women and who are not registered for jury service could make a great difference in the percentages relied upon by the appellant.
It cannot be assumed that there are not many of the registered Negro voters who are of good moral character, sound judgment and intelligence, mentally and physically sound, and otherwise qualified as jurors under the applicable statute. Hill v. Texas, 1942, 316 U.S. 400, 62 S.Ct. 1159, 86 L.Ed. 1559. Nor is it enough that the selecting officials rely on the fact that they knew no Negroes who met the statutory qualifications for jurors. Hill v. Texas, supra.
By the same token it cannot be assumed that all of the 740 Negroes were qualified as jurors; that among the 740 there were no Negro women who had not volunteered for jury service; that there were no Negroes who were not qualified under the statute or who were exempt from call for jury service under the applicable statutes.
Thus, we are driven to the conclusion that the evidence offered by appellant is not adequate to overcome the presumption that the selecting officials properly performed their duties.
The trial court properly denied the motion to quash.
Appellant urges that Shepherd v. State of Florida, 1951, 341 U.S. 50, 71 S.Ct. 549, 95 L.Ed. 740 is the last word on this question and requires a decision in his favor.
When that case appeared in this Court, Shepherd v. State, Fla. 1950, 46 So.2d 880, we held the evidence insufficient to establish discrimination. The Supreme Court of the United States reversed this Court on authority of Cassell v. Texas, supra. No majority opinion was written by the federal court, but a concurring opinion shows that one of the selecting officials testified that whites and Negroes were placed on the jury list in proportion to the number of each race on the voters list. As above noted selection on a proportionate basis is prohibited by the Cassell v. Texas decision.
We have examined the record on appeal filed in this Court in the Shepherd case. It reveals that the defendants there argued that the selecting officials selected the jury only from registered voters in the county involved. It was argued that this discriminated against Negroes because although about one fourth of the county's population over 21 years were Negroes, only about one fourth of these Negroes were registered to vote. Therefore, it was argued that the selecting officials by requiring registration to vote as a qualification for jury service reduced the number of Negroes subject to call from one fourth of the population to about one sixteenth. At the time the jury list in the Shepherd case was prepared our statutes did not require that jurors be registered voters. This provision was added to Sec. 40.01 F.S.A. by Ch. 26,514, Laws of Florida, 1951.
In the case before us there was no showing of selection by proportion to population, nor was it shown that Negroes were excluded from call by any arbitrary standard, or any standard or measure not prescribed by statute.
It is clear that the Shepherd case is not applicable here.
*109 Lest our discussion above be misinterpreted we hasten to explain that we do not in anywise hold that any sex, race or identifiable segment of our population is entitled to proportionate representation on jury lists or juries. The Supreme Court of the United States has repeatedly held that proportioned class representation is not required. Hoyt v. Florida, supra; Akins v. Texas, supra, and numerous other cases. Quite to the contrary, that court has held that selection of jury lists on a basis of proportional representation is invalid. While selection from classes or groups on such a basis does guarantee representation, at the same time it imposes a limitation on the number from each class or group. This is prohibited by the holding in Cassell v. Texas, supra.
The decisions relating to discrimination, because of race, color or class, in jury selection are not difficult to understand. They do not require that there be members of every race or class on every jury list or jury venire. Further, as above stated, they do not require, but rather prohibit, selection on a proportional basis.
They do require that in preparing jury lists, and jury venires, the selection be made without regard to the race or class of those available for such service.
These decisions do not give any party to a cause the right to have members of his race or class on the jury list or the venire from which his jury is selected, or to have such members on the jury. Likewise, no member of any race or group has any right to be included on any particular list or venire, but a party to a cause has a right not to have members of his race or class excluded from jury lists or venires arbitrarily or without sound basis. For the same reasons every citizen, not exempt or disqualified, has the right not to be denied the opportunity of jury service arbitrarily or without sound basis.
If discrimination, or the appearance of it, is to be avoided the system or method used in preparing jury lists must be such as to prevent its occurrence.
The Judicial Council of Florida recognized the need for a system or method which would successfully prevent the occurrence of discrimination and simultaneously distribute the burden of jury service more evenly on all qualified citizens. The Council made a study of the matter and developed a simple plan which is easy to use. Copies of the plan are available for those interested.
Appellant next contends that he should be awarded a new trial because the father of the trial judge served as a member of the petit jury which convicted him.
This question is so novel that there is not to be found one decision in point.
No objection was made to this juror serving on the jury. Appellant seeks to excuse his failure to challenge the juror by saying that had he done so he might have caused the trial judge to be prejudiced against him. This contention attributes to the trial judge an unwarranted and unsupported lack of impartiality and fairness.
The lack of challenge to the trial judge's father as a juror is in itself determinative of this question. If there was basis for a challenge it should have been made prior to the time the jury was seated. None having been made any right to challenge was waived. Ex parte Sullivan, 1944, 155 Fla. 111, 19 So.2d 611.
However, had the challenge been made we know of no basis on which it could have been sustained for cause. Sec. 913.03, F.S.A., which specifies the grounds for challenge to jurors for cause does not include relationship between the trial judge and a juror, although it does in 913.03(9) provide for challenge because of relationship among jurors, attorneys of either party, the defendant, prosecuting witness, or persons alleged to be injured by the complaint. While the trial judge, in order to avoid a situation *110 such as shown here, might well in his discretion have excused his father had he been challenged for cause, it cannot be said that it would have been error had he not done so.
It is next argued that the trial court committed error by permitting appellant's common law wife to testify against him. He interprets Sec. 90.04, F.S.A., which is made applicable to criminal causes by Sec. 932.31, to permit the wife to testify against her husband in a criminal case only if she is an interested party.
This argument is without basis and we must reject it. The statute does not have the effect contended for by appellant. Rather, it abrogates the common law rule that forbade either the husband or wife to testify against the other. Ex parte Beville, 1909, 58 Fla. 170, 50 So. 685, 27 L.R.A., N.S., 273.
The other points raised on appeal relate to the sufficiency of the evidence to support a conviction for first degree murder.
We have each carefully examined the entire record. We find that the evidence is sufficient to support the conviction of first degree murder.
The appellant took the stand giving his version of the manner in which his mother-in-law, the decedent here involved, was decapitated. The jury obviously believed the testimony of appellant's common law wife, the only other eyewitness to the crime, and the other state witnesses. The jury had this right.
We are convinced that the ends of justice do not require a new trial of this cause.
Therefore, having found no reversible error we must and do affirm the judgment and sentence of the trial court.
DREW, C.J., and TERRELL, THOMAS, ROBERTS, THORNAL and CALDWELL, JJ., concur.