WALTER JOHNSON, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error.*    59 So. 894

1.  One cannot escape the penalties for an act which in point of fact produces death which death might possibly have been averted by some possible mode of treatment. When the wound is in itself dangerous to life, mere erroneous treatment of it, or of the wounded man suffering from it, will afford the defendant no protection.

21—Vol. 64.

2. The allowance of leading questions is not assignable for error.

3. An intelligent boy, thirteen years old, may be a competent witness, though not advised as to a temporal punishment for perjury.

4. A witness may testify that some one "cursed" in his presence, though he may not remember the exact words used.

5. A witness having testified that he had talked with no one about the case, may be asked by the court if he had not testified at a previous hearing and to explain.

6. A written statement, not a dying declaration, by the decedent declaring forgiveness of the injury done him, is properly excluded.

7. It suffices to a conviction of a homicide that the wound inflicted was the proximate cause of the death, even though another cause may have contributed thereto.

8. An objection after the verdict that jurors bearing the name of the deceased were related in a remote degree to him, comes too late; they being also related in the same degree to the wife of the defendant.

Writ of error to the Circuit Court for Santa Rosa Coutny.

The facts in the case are stated in the opinion of the court.

*W. W. Clark* and *H. S. Laird,* for Plaintiff in Error;

*Park Trammell,* Attorney General and *C. O. Andrews,* for the State.

COCKRELL, J.—For killing Frank Jernigan by cutting him with a knife, Walter Johnson was convicted of murder in the first degree with a recommendation for mercy and sentenced to imprisonment for life.

The wound, 1½ to 2 inches long and 1½ to 1¼ inches deep, extended through the cavity of the stomach, and while much of the intestines protruded, it does not appear that any of them were cut. The wounded man was treated by a surgeon, but death ensued in about a fortnight thereafter.

Much of the brief here is devoted to the theory that death was due to improper surgery, or that the life might have been saved by proper surgery; but at most the testimony is that under different conditions modern surgery might have been successful. The septic conditions surrounding this patient rendered it highly probable that death would ensue from this severe wound, and a practical certainty that only most efficient outside assistance would have averted the fatality; there was no testimony that this wound under the circumstances was not in itself dangerous to life.

Without, therefore, passing specifically upon the various assignments, we reply in general by adopting the language of Judge T. N. McClellan, speaking for the Supreme Court of Alabama, in Daughdrill v. State, 113 Ala. 7, 21 South. Rep. 378, "A defendant cannot escape the penalties for an act which in point of fact produces death which death might possibly have been averted by some possible mode of treatment. The true doctrine is that, where the wound is in itself dangerous to life, mere erroneous treatment of it or of the wounded man suffering from it will afford the defendant no protection against the charge of unlawful homicide." See also, Wharton on Homicide (3 ed.) Sec. 35, wherein it is said

that the subsequent neglect or mismanagement must have been the sole cause of death.

There are several objections to testimony, upon the sole ground that the questions were leading. The allowance of leading questions is within the discretion of the trial court and is not assignable for error. Reyes v. State, 49 Fla. 17, 38 South. Rep. 257.

The question asked a witness if she "could have recognized anyone any distance from her by moonlight that night" was properly excluded. The purport of the question is not clear to our minds and the treatment in the brief does not elucidate it.

A son of the deceased, thirteen years old was declared a competent witness after considerable examination by the court. His answers are intelligent and he appears thoroughly alive to the punishment inflicted in the next world for false swearing though he seemed to be ignorant of the penalty inflicted by the human law for this crime. He knew it was wrong to tell what was not true and believed there would be dire punishment inflicted upon him after death. The evidence of competency is stronger in this than in the Clinton case, 53 Fla. 98, 43 South. Rep. 312, wherein we refused to interfere with the court's discretion.

We see nothing improper in permitting a witness to testify that some one cursed in his presence, even though he may not remember the exact words used; the general impression only may be fixed in the mind, while the non-essential details escape.

. This young witness having stated that he had talked with no one about the case, was asked by the court if he had not been a witness before the grand jury and at the preliminary trial, and then was permitted to explain that he did not refer to his testimony at these hearings. The

boy may well have confused the meaning of the first question and there was no impropriety in the action of the court in giving him the opportunity to make the correction.

A written statement signed by Frank Jernigan just before his death, declaring his forgiveness of the injury done by Johnson desiring that he be not prosecuted, was in no sense competent evidence for the accused. There was nothing to show that the statement was a dying declaration, nor was it part of the *res gestae* or in anywise a declaration against interest. The statement was written out by Jernigan's spiritual adviser and signed by him when in a weakened condition. It is at most a plea for mercy to an assailant who had stricken him down and is not an admission of guilt.

An attempt was made by the accused to show that he did not flee. The court charged that no effort to flee was made, so every benefit of such action was afforded.

The court's general charge on self defense was ample and it was not necessary to repeat the requested instructions tending to that defense.

The requested instruction that the State must prove that the wound was the proximate cause of the death "independent of any other cause" was properly modified by striking out the quoted portion, as has been pointed out in the first part of this opinion.

After verdict, a new trial was asked because two of the jury were related to the deceased. The objection came too late. The relationship was too remote to come within the prohibited degree and their name Jernigan indicated clearly that some relationship might exist, but was not inquired into upon this record until the defendant whose wife was a Jernigan, the sister of the deceased, had taken his chances in this very complicated family trouble.

There is here the usual conflict in the evidence, but that of the State was equally credible with that of the defense and fully made out the case.

Judgment affirmed.

WHITFIELD, C. J., and TAYLOR, SHACKLEFORD and HOCKER, J. J., concur.