## JAMES BAKER v. THE STATE OF FLORIDA

7 So. (2nd) 792                                    En Banc
April 29, 1942

William S. Robinson, for petitioner.

J. Tom Watson, Attorney General, Joseph E. Gillen, Assistant Attorney General, and Woodrow M. Melvin, Special Assistant Attorney General, for respondent.

CHAPMAN, J.:

On December 16, 1936, James Baker and Clyde Hysler were indicted with Alvin Tyler by a grand jury of Duval County, Florida, for the murder of John Surrency on November 25, 1936. Baker was placed upon trial and was by a jury convicted of murder in the first degree, without recommendation to mercy, and by the trial court he was sentenced to death by electrocution. On writ of error to this Court the verdict and judgment of conviction entered in the lower court were affirmed. See Baker v. State, 137 Fla. 27, 188 So. 634.

On April 12, 1941, James Baker presented to this Court his petition for an order permitting or allowing him to apply to the Circuit Court of Duval County, Florida, for a writ of error coram nobis. The petition was verified by James Baker and set forth some thirteen grounds or reasons why the order should be granted. He was heard by counsel and thereafter on April 12, 1941, an order was entered by this Court denying the said petition. On April 12, 1941, a petition was presented for an order staying the execution of the judgment for a reasonable length of time so as

to permit counsel to apply for a writ of certiorari in the Supreme Court of the United States and the petition on said date was denied by this Court.

On April 27, 1942, James Baker presented to this Court his second petition for an order for leave and permission to apply to the Circuit Court of Duval County for a writ of error coram nobis. The grounds of the petition are the same as contained in the petition ruled upon by this Court on April 15, 1941, with the exceptions: (1) that the lower court had denied counsel for the petitioner an order permitting a physical examination of James Baker by a physician so as to show scars on his body as a result of an alleged beating; and so that the report of the physician as to the scars could be made a part of the petition; (2) an affidavit of Harry Mills, an inmate of the jail on December 13, 1936, was attached to the petiton to the effect that James Baker's head was swollen when placed in jail charged with the murder of Surrency; Shep Brunsen by affidavit attached to the petition stated that he saw a darkey accompanying the officers on December 13, 1936, and saw the said darkey strike Baker terrific blows in the face with his fist; W. H. Wilson, in an affidavit attached to the petition, stated that he observed Baker on December 13, 1936, while in custody of the officers and that he was chained and handcuffed.

The petition represents: (1) that James Baker is a colored man and on November 25, 1936, and subsequent thereto 60,000 negroes were citizens and residents of Duval County and a large number were qualified for jury service but the officers failed or omitted to place the names of any colored people, eligible for jury service, in the venire box and thereby

denied petitioner his constitutional rights; (2) that the officers of Duval County systematically, unlawfully and unconstitutionally, because of race and color, exclude negroes from jury service in Duval County; (3) that the jury trying the petitioner was composed of white men and no negroes were summoned to serve on the jury, although many negroes competent to qualify as jurors resided in Duval County; (4) that when petitioner was taken into custody, he was severely beaten with a rubber hose, and a black jack, and scars therefrom are now on his head and body; that he was taken into the woods, threatened and placed in fear of his life, and a damaging confession was in this manner obtained from the petitioner which was offered in evidence at the trial; that the petitioner is poor and ignorant, and was by the officers held incommunicado; and that his relatives and friends were unable to see him and counsel with him about the serious offense charged against him.

It is settled law that this Court will take judicial notice of its own records. See Pavlis v. Atlas-Imperial Diesel Engine Co., 126 Fla. 808, 172 So. 57; Padgett v. State, 126 Fla. 57, 170 So. 175; Leatherman v. Alta Cliff Co., 114 Fla. 305, 153 So. 845; State ex rel. DuPont-Ball, Inc. v. Livingston, 104 Fla. 33, 139 So. 360; Ocala Northern R. Co. v. Malloy, 68 Fla. 430, 67 So. 93; Capital City Bank v. Hilson, 64 So. 206, 60 So. 189, Ann. Cas. 1914B 1211; McNish v. State, 47 Fla. 69, 36 So. 176.

The jury presenting the indictment and the venire out of which the jury was obtained and the one hearing the testimony and deciding the guilt of the petitioner was drawn under the provisions of Chapter 16058, Acts of 1933, Laws of Florida. This Act

has been sustained against numerous attacks made thereon. See Hysler v. State, 132 Fla. 209, 181 So. 354. On December 6, 1937, James Baker challenged the array of jurors on many grounds but failed to include therein the grounds here presented. It is difficult to comprehend his reasons for not so doing at that time. He was in custody charged with the murder and had signed the challenge to the array containing many grounds, but failed to include the constitutional grounds here urged. Some four years thereafter he desires to relitigate these omitted questions. It cannot be urged that he did not have time to prepare his case for trial, because more than twelve months intervened between the date of the homicide and time of the entry of the judgment. The Criminal Code of 1939 is inapplicable to the case at bar.

If irregularities that may render an indictment illegal or void exist in the drawing or the impaneling of a grand jury returning or presenting an indictment, the approved practice is the presentation to the court for adjudication of the alleged irregularities or defects by plea in abatement. See Tarrance v. State, 43 Fla. 446, 30 So. 685, 23 Sup. Ct. 402, 188 U. S. 519, 47 L. Ed. 572; Haynes v. State, 71 Fla. 585, 72 So. 180; Montgomery v. State, 55 Fla. 97, 45 So. 879; Bonaparte v. State, 65 Fla. 287, 61 So. 633; Hicks v. State, 97 Fla. 199, 120 So. 330; Taylor v. State, 117 Fla. 706, 158 So. 437.

The petitioner seeks an order permitting or allowing him to litigate in the lower court questions of fact viz: the failure of the officers of Duval County to place in the jury box names of negro citizens eligible to jury duty then residing in Duval County, and an intentional, systematic and unconstitutional

discrimination against these eligible negro citizens residing in said county because of race and color. It is charged in the petition that the alleged discrimination had existed for twenty years prior to some three or four years ago. It is not clear from the allegations of the petition that the discrimination existed at the time the petitioner was indicted, tried and sentenced. It has not been made to appear that the petitioner was indicted or tried by a partial or prejudiced jury, but on the contrary tried by a jury carefully selected by the petitioner and his able counsel. The petitioner and his counsel were satisfied and accepted the panel. The petitioner is not entitled to a jury of his own selection but to one legally qualified to render jury service.

In the case of Washington v. State, 95 Fla. 289, 116 So. 470, this Court said:

"Under the provision of the Fourteenth Amendment to the Federal Constitution that 'no State shall . . . deny to any person within its jurisdiction the equal protection of the laws,' an accused person has no right to have members of his race selected as jurors for his trial. . . .

"The mere fact that the sheriff, in executing a venire for petit jurors to try the defendant, who was a colored man, summoned only white men to serve as jurors, and failed and refused to select any colored men of African descent to serve on the jury which was summoned to try the defendant, is not of itself evidence of discrimination against persons of color, solely on account of their color; neither is it a denial to the defendant of the equal protection of the law as contemplated by the Fourteenth Amendment of

the Constitution of the United States.  Montgomery v. State, 53 Fla. 115, 42 South.  Rep. 894.

"While an unlawful discrimination against negroes because of their race or color practiced by an officer in summoning jurors may render the act of summoning illegal, the panel of jurors as formed might not be illegal.  Where a jury that is competent under the law and that is impartial as required by the Constitution, has been tendered, it may be accepted by the accused, who thereby waives his right to object to the panel on the ground that in summoning the jurors members of his race were discriminated against there being no duress or other improper influence to embarrass or injure the accused . . ."

See Rogers v. Alabama, 192 U. S. 226, 24 Sup. Ct. 257, 48 L. Ed. 417; Martin v. Texas, 200 U. S. 316, 26 Sup. Ct. 338, 50 L. Ed. 497; Franklin v. South Carolina, 218 U. S. 161, 30 Sup. Ct. 640, 54 L. Ed. 980.  It has not been made to appear that the trial court refused or declined to receive evidence as to a systematic and unlawful discrimination against the negro race as eligibles for jury duty.  The record shows that the petitioner never presented to or requested the trial court to pass upon these issues. It was the legal duty of the petitioner to seasonably present these issues and obtain a ruling on them in the lower court.  See 31 Am. Jur. 620-25, par. 89, 90, 91, 92 and 93.

It is contended that a confession of the petitioner, admitted as evidence on the part of the prosecution, in the lower court, was obtained by threats, coersion, duress, and other illegal influences and for these reasons the same was improperly admitted because the confession was not freely and voluntarily made

and obtained. Attached to the petition are the affidavits of Harry Mills, Shep Brunsen and W. H. Wilson. It is not shown that these witnesses, or either of them, were present at the time the petitioner made the confession. They corroborate the contention of petitioner that he was beaten, not forced to make the confession. The record has been reexamined on the question of the voluntariness of the confession. Likewise the testimony of the petitioner before the jury when on trial has again been considered. James Baker, the petitioner, testified that he was at the scene of the homicide with Alvin Tyler and was driving the car; that after Tyler killed Surrency he, Tyler, got in the car with Baker and Baker drove him away. There is, broadly speaking, but few conflicts on the main points of the testimony given by Baker to the jury and the confession admitted into evidence against him. It is not contended that he was by force, coercion or duress compelled to testify as he did in the lower court. He gave the testimony to the court and jury when Clyde Hysler was being tried.

In the case of Clay v. State, 143 Fla. 204, 196 So. 462, it was said:

"It is well established law that when it is shown a confession was freely and voluntarily made and that no improper influences were exerted or reward held out to obtain it, the confession is properly admitted into evidence. See Bennett v. State, 96 Fla. 237, 118 So. 18, Nickels v. State, 90 Fla. 659, 106 So. 479; Greene vs. State, 40 Fla. 474, 24 So. 537; Browne v. State, 92 Fla. 699, 109 So. 811; Williams v. State, 48 Fla. 65, 37 So. 521; Davis v. State, 90 Fla. 317, 105 So. 843; Sims v. State, 59 Fla. 38, 52 So. 198; Gantling

v. State, 40 Fla. 237, 23 So. 857; Holland v. State, 39 Fla. 178, 22 So. 298. It is likewise the law of Florida that if an alleged confession was not freely and voluntarily made, it is error to admit the same into evidence against the party making same. See Browne v. State, 92 Fla. 699, 109 So. 711; Davis v. State, 90 Fla. 317, 105 So. 843; Crawford v. State, 70 Fla. 323, 70 So. 374; Deiterle v. State, 98 Fla. 739, 124 So. 47."

The function of a writ of error coram nobis was reiterated in the recent case of Cole v. Walker Fertilizer Co., 147 Fla. 1, 1 So. (2nd) 864, when we said:

"The function of a writ of error coram nobis is to bring to the attention of the court, for correction, some matter of fact which does not appear on the face of the record and unknown to the court or to the parties or counsel at the trial, and which, if known, and properly presented would have prevented the rendition of said judgment. In the case of Lamb v. State, 91 Fla. 396, 107 So. 535, this Court, in part, said:

. . . that by the exercise of due diligence neither the defendant nor the counsel in the case could have known of or ascertained the stated facts before the judgment was rendered or before the motion for a new trial was made; and that the defendant and the counsel exercised all ordinary and reasonable care and diligence to discover and ascertain all facts pertinent to the issue tried; or it must be duly made to appear that such facts or other facts that would have afforded an effective defense, though existing or having occurred prior to the judgment, were not discovered or ascertained or were not made known to the court, because of actual, dominating fraud, duress,

or other unlawful means actually exerted by some one not in privity with the petitioner or counsel, to prevent such discovery or ascertainment or disclosure to the court in due season to be available as an efficient defense or to prevent the rendering of the final judgment rendered . . .' "

The petitioner, James Baker, when on trial in the lower court, took the stand and gave testimony in his own behalf. Likewise when Clyde Hysler was on trial in the lower court James Baker gave testimony as a State witness against Hysler. The testimony in the two trials has been compared or checked against the confession here challenged. We are unable to observe any material conflicts in his testimony when appearing as a witness and the confession which is here contended was unlawfully obtained. It cannot be asserted, in the light of our previous ruling, that the alleged involuntariness of the confession was unknown to the petitioner at the time of going to trial in December, 1937. The record of the cause contradicts such a contention. The allegations of the petition fail to conform to the previous rulings of this Court. Likewise the allegation of unconstitutional discrimination of jurors against the colored race should have been presented to the lower court and testimony given as to the truthfulness thereof. See Montgomery v. State, supra; Williams v. Mississippi, 170 U. S. 213, 42 L. Ed. 1012, 18 Sup. Ct. 583.

The petition for an order permitting or allowing the petitioner to apply to the lower court for a writ of error coram nobis is hereby denied.

BROWN, C. J., WHITFIELD, TERRELL, BUFORD, THOMAS and ADAMS, JJ., concur.