310 So.2d 782 (1975)
Warren M. ADAMS, Jr., Appellant,
v.
STATE of Florida, Appellee.
Betty M. YARBOROUGH, Appellant,
v.
STATE of Florida, Appellee.
Nos. 72-597, 72-598 and 72-644.
District Court of Appeal of Florida, Second District.
March 26, 1975.
Robert E. Jagger, Public Defender, and William F. Casler, Asst. Public Defender, Clearwater, for appellant Adams.
Enrique Escarraz III, St. Petersburg, for appellant Yarborough.
Robert L. Shevin, Atty. Gen., Tallahassee, and Charles Corces, Jr., Asst. Atty. Gen., Tampa, for appellee.

ON PETITION FOR REHEARING
PER CURIAM.
On rehearing, and after additional oral argument, we revisit these two cases which we now consolidate.
Appellants were jointly convicted of felony murder and robbery arising out of the same episode, the victim being the same *783 person in each charge. Factually, the robbery herein was a purse snatching from a 75 year old woman who as a result thereof fell and fractured her hip. Four days later she was operated upon to reduce the fracture and during that operation suddenly suffered a cardiac arrest from which she died.
The threshold question in this appeal is whether the evidence was legally sufficient to support a finding of causation, i.e., that the homicide was committed in the perpetration of the robbery.
Admittedly, the immediate cause of the victim's death was a cardiac arrest during surgery. However, three doctors testified that surgery was medically necessary for the treatment of the victim's injuries, and that absent surgery, she would die. The two doctors which were asked said that the cardiac arrest was caused by the surgery. There was no suggestion that the surgery was improperly performed.
Hence, there is an unbroken chain. Appellant Yarborough snatched the victim's purse causing her to fall. The fall caused the broken hip. The broken hip required treatment by surgery. The surgery brought about the cardiac arrest. The cardiac arrest was the immediate cause of death.
The Florida case closest in point is Grimley v. State, Fla.App. 1st, 1959, 114 So.2d 630, in which the court reversed a manslaughter conviction for insufficient evidence and ordered a new trial. However, on the question of proximate cause the court said:
"The remaining point on appeal questions the sufficiency of the evidence to establish that defendant's negligence was the proximate cause of decedent's death. It cannot be denied but the tragedy in question consisted of a series of most unfortunate events, and the life of decedent would have been spared had any one of the events failed to occur. The rear end collision caused by defendant's momentary lapse or inattention was no different in most respects from numerous similar incidents which occur almost daily throughout our state. Most such collisions result in little more than bent fenders, a crushed radiator and an occasional whiplash injury to the occupant of the innocent vehicle. In this case, however, the collision caused decedent's automobile to catch on fire which resulted in serious burns to the upper extremities of decedent's body. Decedent's satisfactory recovery was interrupted by an unexplained cardiac arrest which in turn induced an onset of septicemia. It was this latter condition which proximately caused death. Although it cannot seriously be contended that the foregoing series of events could have been reasonably foreseen as the natural and probable consequences of a rear end automobile collision, we nevertheless are forced to the conclusion that it was the negligent act of defendant which ultimately resulted in decedent's death."
The Supreme Court upheld a conviction for murder in Berry v. State, 1934, 114 Fla. 73, 153 So. 507, where the immediate cause of death was tetanus which resulted from germs entering the wound inflicted by the defendant. In Johnson v. State, 1912, 64 Fla. 321, 59 So. 894, that court held that where the wound is in itself dangerous to the life, the mere erroneous treatment of the wound or of the wounded man suffering from it would not afford the defendant protection against the charge of unlawful homicide. If a defendant is responsible for death resulting from the negligent medical treatment of a wound inflicted by him, he should be all the more responsible where, as in the instant case, the medical treatment was not negligent.
In an annotation at 100 A.L.R.2d 769 entitled "Homicide: liability where death immediately results from treatment or mistreatment *784 of injury inflicted by defendant," the annotator states at page 774:
"... With respect to a wound which is not necessarily fatal, in jurisdictions wherein there is no controlling statute the person who inflicted such an injury is likewise generally criminally responsible for the death of the injured person even though it immediately resulted from medical or surgical treatment and regardless of whether such treatment was proper or negligent, also on the ground that the original wrongful act was the proximate cause of death, the subsequent treatment with its attendant risks being foreseeable and a consequence of the original wrongful act, ..."
In People v. Paulson, 1967, 80 Ill. App.2d 44, 225 N.E.2d 424, death was caused by an infection which developed during an operation to relieve a hematoma. The hemetoma had been caused by a blow to the head inflicted by the defendant. In affirming a murder conviction, the court held that the chain of events which ultimately caused the death was set in motion by the act of the defendant and that the resulting infection was not disconnected from the defendant's act.
In Quillen v. State, 1955, 10 Terry 114, 49 Del. 114, 110 A.2d 445, the court upheld a murder conviction where it was shown that the victim died of an embolism which was probably caused by an operation necessitated by a shotgun wound inflicted by the defendant.
The victim suffered wounds on her chin and cheek in an automobile accident in State v. Cox, 1960, 82 Idaho 150, 351 P.2d 472. During the course of suturing the wounds, an anesthesia was given. Immediately after the second dosage, the victim died. The pathologist said that it was possible that the victim would have died from the original wounds, but that the findings were inadequate to explain her death. He agreed that the anesthesia was a contributing factor to her death. The court held that the defendant could be convicted of negligent homicide for having caused the accident.
In Commonwealth v. Eisenhower, 1897, 181 Pa. 470, 37 A. 521, during the course of the operation the victim died because a drainage tube inserted by a surgeon found its way into his spinal canal. The operation was required because the victim had suffered a gunshot wound inflicted by the defendant. There was no suggestion that the doctor was negligent. The court affirmed the conviction of murder.
In upholding a manslaughter conviction in Odeneal v. State, 1913, 128 Tenn. 60, 157 S.W. 419, the Tennessee court said:
"... One who unlawfully inflicts a dangerous wound upon another is held for the consequences flowing from such injury, whether the sequence be direct or through the operation of intermediate agencies dependent upon and arising out of the original cause. One of these dependent occurrences is the necessity of surgical aid, which may eventuate as the immediate cause of death... ."
In the instant case the evidence supported the finding that the victim's fall was the proximate cause of her death.
Appellants' reliance upon Tipton v. State, Fla. 1957, 97 So.2d 277, is misplaced. In that case, there was no proof of the cause of death. However, the opinion in that case dealt primarily with responsibility rather than causation. The court held that even if causation were to be admitted, the acts of the defendant fell short of the "degree of the act" necessary to constitute manslaughter. In the instant case, we are not concerned with the degree of the act because by statute the commission of the felony establishes the responsibility for the death which ensues. The fact that there was no evidence that the appellants intended to murder the victim is irrelevant because they are being charged with a murder which resulted during the commission *785 of a felony. Under those circumstances, no proof of intent to kill is required. State v. Williams, Fla.App.2d, 1971, 254 So.2d 548.
Having determined that the evidence supports the finding of the court on the issue of causation, we consider now the fact that the court entered two judgments and imposed two sentences on each of appellants. First of all, we observe that this apparently came about because the state was worried about causation and therefore in an abundance of caution procured a two-count indictment against each appellant; one charging first degree murder and the other robbery, as noted. From that point on it's obvious from the record that both the court and counsel traveled on the assumption that each count charged a separate offense and that a conviction could be had on either or both. This is illustrated by a bargain, in the manner of a "plea bargain," which was struck between the parties with the acquiescence of the court, for a waiver of jury trial on the condition that the death penalty would not be imposed. (It is to be noted that the judgments herein were entered on June 21, 1972, 9 days before the United States Supreme Court handed down its decision in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), voiding the then existing death penalty.) This bargain, which takes on added significance later as will be seen, was entered into on the day of trial and went as follows:
"MR. CASLER: If it please the Court, the defendant Adams would request that the State agree to non-jury trial in this matter. That's all I have to say at this time.
THE COURT: What says defendant Yarborough?
MR. ESCARRAZ: We join, we join.
THE COURT: What says the State?
MR. MENSH [Assistant State's Attorney]: That's agreeable.
* * * * * *
THE COURT: ... [H]as there been any understanding between the State and defense counsel as to what the State would ask as the maximum penalty?
* * * * * *
MR. ALLWEISS [Assistant State's Attorney]: No, sir, except with regard to the first and second, that's all.
MR. MENSH: Nothing in regard to the penalty, right.
THE COURT: Yes, I said with regard to the penalty, has any understanding been arrived at?
MR. MENSH: No, sir.
MR. CASLER: No, sir.
Pardon me, Judge, let me make sure may client understands that.
THE COURT: I understand you had agreed to a maximum 
MR. MENSH: That's right, second degree.

MR. ALLWEISS: That's fine.

THE COURT: The reason I asked, the Court at a brief bench conference had been advised that the State was willing to agree that they would not ask for any penalty in excess of the maximum life imprisonment for  life confinement for second degree murder.
MR. CASLER: Yes, sir, that's fine.
THE COURT: And the Court has agreed that it would accept this recommendation.
You understand that?
DEFENDANT YARBOROUGH: Yes, sir.
THE COURT: Then the maximum penalty that the Court would impose if you *786 are found guilty of murder in the second degree would be the maximum penalty, which is 
MR. ALLWEISS: Thirty years.

* * *" (Italics added.)
After the non-jury trial which immediately followed, the court made the following findings of fact and entered the judgments and sentences as indicated:
"The Court finds as a matter of fact beyond every reasonable doubt that on the 14th day of February, 1972, Zelma Rogers was assaulted by the defendants Adams and Yarborough in Pinellas County, Florida, and that they by force and violence committed against the person of Zelma Rogers the crime of robbery.
The Court further finds that in the course of that robbery Zelma Rogers, a human being, sustained injuries consisting of a broken hip, that on the 18th day of February, approximately four days after the robbery, Zelma Rogers languished and died while undergoing surgery on account of the broken hip, and that under the law the death of Zelma Rogers is deemed to have occurred while defendants Adams and Yarborough were in the commission of the crime of robbery.
Defendants will stand before the Bench.
Warren N. Adams, Jr., and Betty M. Yarborough, this Court does find each of you to be guilty of murder in the first degree as charged in Count One of this indictment No. 23,971, and this Court does find each of you guilty for the crime of robbery as charged in Count Two of the aforementioned information  indictment, and now asks if you have anything to say why the Court should not at this time adjudge you each guilty of the crimes of which you have been found guilty and sentence you as provided by law.
MR. CASLER: Could I have just a second, Judge?
MR. ESCARRAZ: If it please the Court, first I'd like to point out that at the  while the jury was being selected, that we had had a discussion, and we had decided that we would go without a jury, and that the State had agreed that we would not  that if the defendant Betty Yarborough were found guilty of murder, the Court would not sentence greater than second degree.

THE COURT: That's correct.

MR. ESCARRAZ: The Court agreed with that, and I would believe that an adjudication of murder in the first degree would require a sentence to that degree, and that for that reason I think an adjudication would have to be on second degree rather than on first degree in order to have a legal sentence. That's a technicality that I think  I'm not exactly certain, but that's a technical problem that I see... .
MR. CASLER: It hadn't dawned on me, honestly, Judge, until just this moment, but I think he's probably right.
THE COURT: The Court isn't concerned about it, counsel, in view of the agreement.
* * * * * *
THE COURT: Betty M. Yarborough, and you, Warren N. Adams, Jr., this Court does adjudge each of you guilty of the crime of murder in the first degree as laid down in Count One of indictment number 23,971, and the Court does adjudge each of you to be guilty of the crime of robbery as laid in Count Two of that indictment. You have been given opportunity to show cause, if any you had, why sentence ought not to be imposed, and nothing having been heard to preclude the imposition of sentence, the Court does now sentence you.
* * * * * *
The Court having given you additional opportunity to show cause why sentence *787 ought not to be imposed, and the Court still having heard nothing to preclude the imposition of sentence, for the crime of murder, first degree, as charged in Count One of the indictment, it is the sentence of the law that you, Warren Adams, Jr., and you, Betty M. Yarborough, each be committed to the Division of Corrections of the State of Florida, confined by it at hard labor in the State Prison for the term of thirty years.
It is the further sentence of the law that for the crime of robbery as charged in Count Two of the indictment, that each of you be committed to the Division of Corrections of the State of Florida, confined by it at hard labor in the State Prison for the term  the balance of your natural life... ." (Italics added.)
Now at the outset, we hold that it was error to enter two judgments. There were not two offenses under the facts herein; there was just one offense, to wit: felony murder, of which the robbery was an essential element. Upon a finding of guilty of first degree murder the robbery merged therein and became merely a part thereof. See, Hernandez v. State, Fla. App.2d, 1973, 278 So.2d 307. The judgments and sentences for robbery must therefore be vacated and set aside.
That leaves us at this point, however, with the legal impossibility of incongruous sentences imposed on each appellant under the murder court. That is to say, the court adjudicated appellants guilty of first degree murder, which is a capital felony punishable by death or by no less than life imprisonment. Sections 782.04(1) and 775.082(1), F.S. 1971. But the court then imposed a sentence of thirty years, which is the maximum penalty for second degree murder but is less than the minimum for first degree murder. Sections 782.04(2) and 775.082(2), F.S. 1971. This sentence is void, therefore, since it is well settled that a court cannot sentence for less than the statutory minimum. See, Dean v. State, Fla. 1955, 83 So.2d 777, and State v. Dull, Fla.App. 1st, 1971, 249 So.2d 758.
Notwithstanding, as may be clearly seen from the above-quoted colloquy between the court and counsel both at the bargaining session and at sentencing, the court obviously construed, and intended to honor, the bargain to limit the sentence for murder to thirty years imprisonment. This could legally only have been done, however, had he entered a judgment for second degree murder, which is necessarily included in and is a lesser degree of, the first degree murder as found by the court. We think that justice will best be served, therefore, since the trial court clearly intended to honor the bargain, by remanding the cause with directions that the judgment of first degree murder as to each appellant be vacated and that judgments be entered for second degree murder, as included in the first degree murder, and that appropriate sentences be imposed thereon.
Rehearing is accordingly granted. Our opinions heretofore entered in these cases are hereby withdrawn and this opinion shall stand in their stead.
Affirmed in part and reversed in part.
McNULTY, C.J., and HOBSON and GRIMES, JJ., concur.
BOARDMAN, J., concurs in part and dissents in part with opinion.
BOARDMAN, Judge (concurring in part; dissenting in part).
I am in complete accord with that part of the majority opinion holding that the assault element of the robbery (felony) in the instant case was the proximate cause of the homicide (murder). The facts clearly show an unbroken chain of events triggered by the action of appellants resulting in the death of the victim.
*788 With deference, I do not agree with that part of the majority opinion concerning the applicability of Hernandez v. State, Fla.App.2d, 1973, 278 So.2d 307. The Hernandez decision states that the felony merges into the murder under the felony-murder rule. While I agree that the robbery is an essential element of the murder, under felony-murder, I reach this conclusion on the legal theory that felony-murder is composed of two separate crimes grounded on the same act rather than the merger theory.
I concur with the majority that under the peculiar facts presented in the instant case that only one sentence is appropriate. See Cone v. State, Fla. 1973, 285 So.2d 12.
The majority holds that the appellants' sentences for murder are void, and I agree with their reasoning. My brethren also vacate and set aside the robbery sentences under Hernandez, supra, due to the merger of the offenses, and remand for proper sentences. I must disagree with this concept as I think it not applicable here.
The record indicates that appellants entered into an agreement tantamount to a plea bargain regarding the 30-year sentence on first-degree murder as maximum punishment to prevent imposition of possible capital punishment. The instant case was decided before Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). The appellants' main concern was to avoid the death penalty. We are unable to find in the record any evidence indicating that the appellants were led to believe that they would not be sentenced to the maximum penalty for the robbery offense. Therefore, under the rationale of the single transaction rule only one of the two sentences can stand on these facts. The murder sentences being void, for the same reasons as stated in the majority opinion, must, in my judgment, fall; but, the life sentences on robbery are valid and should be upheld. To this extent, I respectfully depart from the majority opinion.