371 So.2d 482 (1979)
Clifford HALLMAN, Petitioner,
v.
STATE of Florida, Respondent.
No. 51633.
Supreme Court of Florida.
March 15, 1979.
Rehearing Denied June 21, 1979.
*483 Jack O. Johnson, Public Defender, and Robert H. Grizzard, II, Asst. Public Defender, Bartow, for petitioner.
Jim Smith, Atty. Gen., and Charles Corces, Jr., Asst. Atty. Gen., Tampa, for respondent.
ALDERMAN, Justice.
Clifford Hallman, by petition for writ of certiorari, seeks review of the decision of the district court in Hallman v. State, 343 So.2d 912 (Fla.2d DCA 1977). We originally granted certiorari because of an apparent conflict between that decision and Fast v. State, 221 So.2d 203 (Fla.3d DCA 1969), but we have now determined that no direct conflict exists and that certiorari is not the appropriate remedy. However, pursuant to article V, section 2(a), Florida Constitution, which provides that no cause shall be dismissed because an improper remedy is sought, we treat Hallman's petition as a request for permission to apply to the trial court for writ of error coram nobis addressed to his conviction of first degree murder and his sentence of death. Having considered his request, we find that it is legally insufficient.
Hallman was indicted for the first degree murder of Eleanor Groves, it being alleged that Hallman, with premeditated design, caused Groves' death by inflicting fatal cuts on her throat and neck. Hallman was tried, convicted, and then sentenced to death. On December 11, 1974, this Court affirmed the conviction and sentence. Hallman v. State, *484 305 So.2d 180 (Fla. 1974), cert. denied, 428 U.S. 911, 96 S.Ct. 3226, 49 L.Ed.2d 1220 (1976).
Approximately two years later, Hallman filed a three-part motion with the sentencing circuit judge. The motion alleged that in 1975 the administrator of the estate of Eleanor Groves filed suit against Tampa General Hospital contending that Mrs. Groves died as a result of the negligence of the hospital; that the hospital had settled the lawsuit in favor of Mrs. Groves' estate; that Hallman's wrongful acts were not the cause of death of Mrs. Groves; and that if in a new trial the jury found that the hospital's negligence was an intervening cause of death, the jury could find him not guilty of homicide. Hallman requested the following relief: that the trial judge reduce the sentence of death; or that the trial court set aside the sentence of death and grant a new trial on the grounds of newly discovered material evidence; or that the trial court issue a writ of error coram nobis. The trial court denied all three requests.
Hallman appealed to the district court which held that it was without jurisdiction to review the trial court's refusal to reduce the sentence because that portion of the order was nonappealable.[1] It also held that Hallman's motion under Florida Rule of Criminal Procedure 3.850, to set aside the judgment and grant a new trial, was improper because newly discovered evidence cannot be a basis for relief under that rule. It further held that Florida Rule of Criminal Procedure 3.600(a)(3) could not support the grant of a new trial because Hallman's motion was untimely under that rule. Finally, it held that a writ of error coram nobis can be issued only by "the appellate court which had previously entertained an appeal from the final judgment in the case and affirmed it by its mandate," in this case the Supreme Court of Florida. See Hallman v. State, 343 So.2d 912, 913 (Fla.2d DCA 1977).
We approve the decision of the Second District in all respects and agree that it correctly found that the trial court was without jurisdiction to entertain Hallman's petition for writ of error coram nobis because permission to seek such relief must first be obtained from this Court.
The writ of error coram nobis was available at common law in both civil and criminal cases. This Court long ago recognized that coram nobis was applicable to both civil and criminal cases in this state. As we explained in Lamb v. State, 91 Fla. 396, 107 So. 535 (1926):
Common-law writs of procedure that have not been abrogated or superseded by the Constitution or by statutory regulations are available in this state, but the use of such judicial writs may be regulated by statute or by rules of court duly promulgated under statutory authority... . 107 So. at p. 537.
Although writs of error coram nobis have now been abolished in civil cases by rule 1.540(b), Rules of Civil Procedure, this remedy remains viable in criminal cases because it has not been expressly abrogated or superseded. Our recent decision in Ohio Casualty Co. v. Parrish, 350 So.2d 466 (Fla. 1977), where the issue was whether rule 1.540, Rules of Civil Procedure, allows the trial court to entertain a timely motion to modify a civil judgment without first obtaining permission of the appellate court, is not applicable in this case where coram nobis is sought in a criminal case.[2]
The requirements of a writ of error coram nobis have been set out in numerous cases from this Court. A petition for *485 this writ addressed to the appellate court must disclose fully the alleged facts relied on; mere conclusory statements are insufficient. The appellate court must be afforded a full opportunity to evaluate the alleged facts for itself and to determine whether they establish prima facie grounds. Lamb v. State, supra; Washington v. State, 92 Fla. 740, 110 So. 259 (1926); Urga v. State, 157 Fla. 794, 26 So.2d 786 (1946). Furthermore, the petition should assert the evidence upon which the alleged facts can be proved and the source of such evidence. Russ v. State, 95 So.2d 594 (Fla. 1957). The function of a writ of error coram nobis is to correct errors of fact, not errors of law. Leavitt v. State, 116 Fla. 738, 156 So. 904 (1934). The facts upon which the petition is based must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known them by the use of diligence. Kinsey v. State, 155 Fla. 159, 19 So.2d 706 (1944).
In considering a petition for writ of error coram nobis, the appellate court has the responsibility to determine the legal effect of the facts alleged upon the previously entered judgment. When the appellate court finds that the facts are sufficient in legal effect, the next step is for the trial court to determine the truth of the allegations in an appropriate evidentiary hearing. Chambers v. State, 117 Fla. 642, 158 So. 153 (1934).
The general rule repeatedly employed by this Court to establish the sufficiency of an application for writ of error coram nobis is that the alleged facts must be of such a vital nature that had they been known to the trial court, they conclusively would have prevented the entry of the judgment. Williams v. Yelvington, 103 Fla. 145, 137 So. 156 (1931); House v. State, 130 Fla. 400, 177 So. 705 (1937); Baker v. State, 150 Fla. 446, 7 So.2d 792 (1942); Cayson v. State, 139 So.2d 719 (Fla.1st DCA), appeal dismissed, 146 So.2d 749 (Fla. 1962). In Russ v. State, this Court expressly stated: "The showing must be such that if the matters shown had been before the trial court when judgment was entered, the court would have been precluded from entering the judgment." 95 So.2d at 597 (emphasis added). This traditional "conclusiveness test" in error coram nobis proceedings is predicated on the need for finality in judicial proceedings. This is a sound principle, for litigants and courts alike must be able to determine with certainty a time when a dispute has come to an end.
Turning now to the specific allegations in the present case, we find that Hallman failed to meet the prerequisites which would warrant granting the writ of error coram nobis. He alleged the ultimate conclusion of negligence on the part of the hospital without disclosing fully the specific facts upon which he relies for this conclusion. In addition, the alleged medical malpractice of the hospital could have been known to Hallman or his counsel at the time of trial through use of due diligence. The fact that the hospital, subsequent to Hallman's trial settled a wrongful death claim made by Mrs. Groves' estate is irrelevant. This negotiated settlement in no way establishes that the hospital caused her death. If the hospital is guilty of medical malpractice, this fact could have been established by medical records and the medical witnesses that were available, and could have been discovered through use of due diligence at the time of Hallman's trial.
More importantly, even if the hospital's alleged medical malpractice could not have been known at the time of Hallman's trial, the writ of error coram nobis would not lie because the fact of the hospital's negligence would not have precluded Hallman's conviction. As this Court explained in Johnson v. State, 64 Fla. 321, 323, 59 So. 894, 895 (1912):
A defendant cannot escape the penalties for an act which in point of fact produces death, which death might possibly have been averted by some possible mode of treatment. The true doctrine is that, where the wound is in itself dangerous to life, mere erroneous treatment of it or of *486 the wounded man suffering from it will afford the defendant no protection against the charge of unlawful homicide... .
And as the district court stated in Tunsil v. State, 338 So.2d 874, 875 (Fla.3d DCA 1976):
Appellant seeks a reversal of his conviction for manslaughter on the grounds that the victim's death could have been avoided through affirmative medical treatment. Appellant argues that the lack of affirmative medical treatment constituted an intervening cause relieving him of any criminal responsibility for the victim's death.
In support of his argument, appellant attempts to distinguish those Florida cases holding that affirmative medical treatment will not break the chain of causation between a perpetrator's act and his criminal responsibility for the victim's death. See, e.g., Adams v. State, 310 So.2d 782 (Fla.2d DCA 1975), and the cases cited therein.
We are of the opinion that appellant's distinction between affirmative medical treatment and lack of affirmative medical treatment is without merit, and that, based on the facts appearing in the record on appeal, the case of Johnson v. State, 64 Fla. 321, 59 So. 894 (1912), is controlling. The record shows that appellant's actions were the proximate cause of the victim's initial injury, i.e., brain damage, and we find no intervening cause relieving appellant of the criminal responsibility for the victim's death. ..
So, even if the hospital's negligence had contributed to the victim's death, this fact would not entitle Hallman to a new trial on his conviction.
Likewise, he would not be entitled to a rehearing on his sentence because, aside from the fact that the medical evidence was in existence and could have been known to Hallman or his counsel at the time of trial through use of due diligence, even if evidence of the hospital's alleged malpractice had been presented during the trial, the trial court would not have been precluded from entering the death sentence.
Hallman's request for permission to file a petition for writ of error coram nobis is denied.
It is so ordered.
ENGLAND, C.J., and ADKINS and SUNDBERG, JJ., concur.
OVERTON, J., concurs in part and dissents in part with an opinion, with which BOYD and HATCHETT, JJ., concur.
OVERTON, Justice, concurring in part, dissenting in part.
I agree with the majority opinion in its holding that a hospital's negligence cannot be grounds for reversal of a defendant's conviction of first-degree murder merely because the death of the victim might possibly have been averted by some other mode of treatment. See Johnson v. State, 64 Fla. 321, 59 So. 894 (1912).
I strongly dissent, however, from that portion of the majority opinion which holds that subsequently discovered facts, if true, relating to alleged medical malpractice of Tampa General Hospital in its treatment of the victim cannot now be considered as a factor in determining the appropriateness of the death sentence in this cause.
This holding by the majority in effect says that we no longer have any responsibility to assure justice and fairness in the application of the death penalty in this case and uses the need for finality in our decisions as a basis for that determination.
In the instant case, Hallman was indicted in 1973, tried, convicted, and sentenced to death. This author, together with Justices Adkins, Roberts, Dekle, and McCain, affirmed the conviction and approved the imposition of the death penalty in this cause in December of 1974. Hallman v. State, 305 So.2d 180 (Fla. 1974), cert. denied, 428 U.S. 911, 96 S.Ct. 3226, 49 L.Ed.2d 1220 (1976). Justices Boyd and Ervin dissented. In the following year, 1975, the estate of the victim filed suit asserting malpractice by the hospital. The hospital settled the malpractice suit with the estate, and Hallman *487 commenced this proceeding. As a justice who must make the final determination as to whether the death penalty should be imposed, I would hope I would always have the opportunity to review that determination whenever new relevant evidence is discovered.
My dissent is from the holding of the majority that even if the hospital was negligent, that factor should not now be considered as to whether Hallman should live or die. That holding is totally wrong. It is a factor which, if known, would have been a proper item for consideration by the jury in the sentencing phase, by the trial judge when he imposed sentence, and by this Court when we reviewed the case. I realize that this alleged malpractice, if true, is not controlling in itself, but it is a material and relevant factor which should be considered in determining the appropriateness of the death sentence.
As one of the two justices remaining on this Court who approved the imposition of the death penalty in this case, I believe that the occurrence of any malpractice in treating the victim and the extent of that malpractice are relevant facts which should be considered in the sentencing phase of this proceeding. I totally disagree with the conclusion reached by the majority that the fact that the hospital settled a wrongful death claim made by the victim's estate is irrelevant. In my view, that fact is a sufficient basis to inquire further to determine if the allegations of malpractice are true. If the malpractice allegations are true, that circumstance would be a significant but not controlling factor in determining the appropriateness of the death sentence in this cause.
It is also important to recognize that if the settlement of the malpractice suit had been discovered subsequent to trial but in sufficient time to permit filing of a motion for new trial under Florida Rule of Criminal Procedure 3.600(a)(3),[1] the "probability test" of a motion for a new trial would have been applied in this case rather than the "conclusiveness test" of a petition for a writ of error coram nobis.
A death case should be an exception to the "conclusiveness test." In my view, the rigid application of the "conclusiveness test" is not proper in cases where the death penalty has been imposed. As Mr. Justice Stevens reasoned in writing for the plurality in Gardner v. Florida, 430 U.S. 349, 351, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), the death penalty is different from any other means of punishment, both in its severity and in its finality. I also believe our failure to consider these allegations on the merits in the sentencing phase will result in a weakening of our death penalty statute and could lead to a reversal of this cause under the principles expounded by the United States Supreme Court in Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). The majority in Lockett stated that: "The need for treating each defendant in a capital case with that degree of respect due the uniqueness of the individual is far more important than in noncapital cases." 438 U.S. at 605, 98 S.Ct. at 2965, 57 L.Ed.2d at 990.
In conclusion, the majority's mistake in this case is not allowing the issue of the alleged malpractice to be considered on its merits in regard to the appropriateness of the death penalty in this cause.
I would find the petition for writ of error coram nobis to be prima facie sufficient insofar as it pertains to a new sentencing proceeding and direct the trial court to determine the truthfulness of the allegations, and, if the allegations are true, a new sentencing proceeding should commence.
BOYD and HATCHETT, JJ., concur.
NOTES
[1] Florida Rule of Criminal Procedure 3.800(b), governing reduction of sentences, has been amended since the date of trial court's order. As amended, rule 3.800(b) does not apply to cases in which the death penalty is imposed.
[2] We note that the federal courts have also continued to recognize the viability of the writ of error coram nobis in criminal cases although rule 60(b) of the Federal Rules of Civil Procedure expressly abolished the writ of error coram nobis in civil cases. United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1953); United States v. Norman, 391 F.2d 212 (6th Cir.1968), cert. den., 390 U.S. 1014, 88 S.Ct. 1265, 20 L.Ed.2d 163; Grene v. United States, 448 F.2d 720 (5th Cir.1971).
[1] The rule states:

(a) The court shall grant a new trial if any of the following grounds is established:
.....
(3) That new and material evidence, that if introduced at the trial would probably have changed the verdict or finding of the court, and that the defendant could not with reasonable diligence have discovered and produced upon the trial, has been discovered.